IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JONATHAN TYLER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | Civil Action No.: _____ |
| | § | **317-CV2966-C** |
| DAVID STUART SANDLER, | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Jonathan Tyler files this Complaint for Declaratory Judgment against Defendant David Stuart Sandler and respectfully states as follows:

### PARTIES

1. Jonathan Tyler is an individual with his principal place of business at Dallas, Texas.

2. David Stuart Sandler is an individual and may be served at his principal place of business at 4816 Queen Ave. South, Minneapolis, Minnesota 55410.

### JURISDICTION AND VENUE

3. Jonathan Tyler brings this action against Sandler seeking a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, as well as under the Texas Declaratory Judgments Act, Texas Civil Practice and Remedies Code Chapter 37, for the purpose of resolving a question of actual controversy among the parties, namely, whether, the use of

the name "Jonathan Tyler and the Northern Lights" by Jonathan Tyler is an infringement on Sandler's registered trademark "Northern Light."

4. Jonathan Tyler believes he may lawfully market, promote and perform as his musical group "Jonathan Tyler and the Northern Lights" notwithstanding the fact that Sandler currently possesses a federally registered trademark for the name "Northern Light" U.S. Reg. No. 3479542.

5. Jonathan Tyler has taken definite and concrete steps in performing, promoting and marketing "Jonathan Tyler and the Northern Lights" prior to the filing of this lawsuit.

6. On or about September 26, 2014, Sandler informed Jonathan Tyler that Sandler would seek damages if Jonathan Tyler continued to perform, market and promote his musical entertainment group as "Jonathan Tyler and the Northern Lights." Sandler alleged that the use of "Northern Lights" in "Jonathan Tyler and the Northern Lights" was an infringement of Sandler's registered trademark for the name "Northern Light."

7. Therefore, an actual, substantial, and continuing justiciable controversy exists between Jonathan Tyler and Sandler with respect to which Jonathan Tyler requires a declaration of rights by this Honorable Court.

8. On August 5, 2008, the United States Patent and Trademark Office issued a registration to Sandler for the mark "Northern Light." U.S. Reg. No. 3479542 (the "Challenged Mark"). According to the registration certificate the word mark "Northern Light" is for goods and services, audio recordings featuring music and entertainment services by musical group including live musical performances.

9. Thereafter Sandler sought out Jonathan Tyler and accused Tyler of infringing the Challenged Mark.

10. Sandler did so knowing that Jonathan Tyler resides Dallas, which is in the Northern District of Texas.

11. Sandler did so knowing that "Jonathan Tyler and the Northern Lights" was based in the Dallas-Fort Worth area.

12. Sandler asserted that the Challenged Mark applies in subject matter scope to the name and activities of "Jonathan Tyler and the Northern Lights."

13. Sandler asserted that the Challenged Mark applies in geographic scope to performances in the Dallas-Fort Worth area.

14. On or about February 19, 2010, Sandler and Jonathan Tyler entered into the agreement attached hereto as Exhibit A (the "2010 Agreement").

15. The notice address for Jonathan Tyler in the 2010 Agreement is in Dallas, Texas, which is in the Northern District of Texas.

16. By its terms, the 2010 Agreement would expire in the event that Jonathan Tyler did not make renewal payments to Sandler.

17. Jonathan Tyler has ceased renewal payments.

18. Sandler has thereafter renewed accusations of infringement against Jonathan Tyler.

19. At no time has Sandler provided Jonathan Tyler with the names of other licensee(s) or past licensee(s) to the Challenged Mark.

20. Jonathan Tyler had not heard of Sandler's band "Northern Light" before being presented with Sandler's trademark demand.

21. At no time has Sandler provided Jonathan Tyler with the dates and times of performances by "Northern Light" the band or performances of "Northern Light" songs in Texas.

22. This court has federal question trademark subject matter jurisdiction arising under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a). This court has jurisdiction over the state law claims herein under the provisions of 28 U.S.C. § 1338(b) because these claims are joined with substantial and related claims under the trademark laws of the United States, 15 U.S.C. § 1051 *et seq*.

23. This court also has diversity jurisdiction under 28 US.C. § 1332 because Plaintiff is a resident of Texas, whereas Defendant is a resident of Minnesota.

24. Venue is proper in this judicial district under 28 U.S.C. §1391 as a substantial part of the events giving rise to the claim have occurred in the Northern District of Texas.

25. Sandler is subject to the personal jurisdiction of this court because of his systematic threat to sue Jonathan Tyler and a substantial part of the events giving rise to the alleged claim by Sandler have occurred in the Northern District of Texas. The musical group "Jonathan Tyler and the Northern Lights" was formed in Dallas, Texas in 2007 and has performed, recorded and been based in Dallas, Texas since 2007.

## NATURE OF THE DISPUTE

26. Jonathan Tyler seeks a declaratory judgment that the use of "Jonathan Tyler and the Northern Lights" for his musical group, for any and all purposes, does not infringe upon Sandler's "Northern Light" trademark.

27. On information and belief, "Minnesota" was the most popular song of Sandler and his-one time band "The Northern Light".

28. On information belief, the song "Minnesota" was first released in 1975.

29. On information and belief, Sandler's "Northern Light" band has not performed in the Northern District of Texas since the issuance of the Challenged Mark.

30. On information and belief, there are many musical groups and/or business which use the term "Northern Light" outright, or are using "Northern Light(s)" in their name. Focusing only on the United States (that is excluding the many British, Canadian, German, and Scandinavian groups using "Northern Light(s)" names) these groups include, but are not limited to:

    a. Northern Light, a band out of North Dakota.[1]

    b. Willie Jack and the Northern Light[2]

    b. Gabriel Wolfchild and the Northern Light[3]

    d. Northern Light Orchestra.[4]

    e. Northern Lights, a "metalcore" band from Denver, Colorado.[5]

    f. "Northern Lights" the high school marching band of the West Michigan homeschool association.[6]

    g. We are the Northern Lights, and "indie folk pop band" from New York, New York.[7]

---

[1] https://northernlightfolk.bandcamp.com/; see also, https://www.facebook.com/pg/NorthernLightFolk/about/?ref=page_internal
[2] https://www.facebook.com/pg/wjtnl/about/?ref=page_internal
[3] https://www.wolfchildmusic.com/about
[4] https://www.carangel.com/northern-light-orchestra/
[5] https://www.facebook.com/pg/northernlightsus/about/?ref=page_internal
[6] http://www.wmhfa.org/
[7] https://www.facebook.com/pg/wearethenorthernlightsband/about/?ref=page_internal

h. Tami Lee and the Northern Lights, a country music and variety act from the Midwest.[8]

i. Northern Lights Entertainment, an events provider in New York and Boston, which provides music and bands for high school parties, corporate events, and weddings, other social gatherings.[9]

j. The Shoreview Northern Lights Variety Band of Bethel University in St. Paul, Minnesota.[10]

k. Northern Lights, a "bluegrass bar band" promoted by Red Rock Records of St. Paul, Minnesota.[11]

l. The Northern Lights Band of Missoula, Montana.[12]

## COUNT 1- DECLARATORY JUDGMENT
### (Non-infringement of Federal Registration No. 3479542)

31. Jonathan Tyler incorporates and realleges the allegations of paragraphs 1-28 as if set forth fully herein.

32. An actual justiciable controversy exists between Jonathan Tyler and Sandler regarding whether a claim exists for trademark infringement under 15 U.S.C. §§ 1051 *et seq.*

33. Subject Matter Declaration: Jonathan Tyler has not infringed and will not infringe any valid or enforceable right of Sandler in the "Northern Light" mark. The sale,

---

[8] http://www.tamilee.net/
[9] http://northernlightsentertainment.com/
[10] https://www.bethel.edu/events/arts/music/2017/shoreview-northern-lights-variety-band1
[11] https://www.redhouserecords.com/artists/northern-lights
[12] https://www.facebook.com/pg/The-Northern-Lights-Band-199581880109542/about/?ref=page_internal

offer for sale, distribution, advertisement, and live performances of "Jonathan Tyler and the Northern Lights" is not likely to cause confusion, mistake, or to deceive and therefore does not infringe any enforceable right Sandler may assert in the "Northern Light" mark.

34. Within and in no way a limitation of the Subject Matter Declaration sought, Jonathan Tyler seeks a declaration that the Challenged Mark is not distinctive.

35. Within and in no way a limitation of the Subject Matter Declaration sought, Jonathan Tyler seeks a declaration that the Challenged Mark has no secondary meaning, or that any secondary meaning is so limited that it does not reach "Jonathan Tyler and the Northern Lights".

36. Within and in no way a limitation of the Subject Matter Declaration sought, Jonathan Tyler seeks a declaration that "Northern Light" and "Northern Lights" are different in the context of the Challenged Mark, and further, a declaration that "Jonathan Tyler and the Northern Lights" does not infringe the Challenged Mark.

37. Within and in no way a limitation of the Subject Matter Declaration sought, Jonathan Tyler seeks a declaration that failure to protect and prosecute the Challenged Mark by Sandler has diluted the Challenged Mark to the point that "Jonathan Tyler and the Northern Lights" no longer infringes, if it ever infringed at all.

38. Geographic Declaration: In addition, and to the extent the Subject Matter Declaration does not dispose of this action, Jonathan Tyler seeks a declaration that the Challenged Mark does not reach performances in the Dallas-Fort Worth area.

39. A judicial declaration of non-infringement is necessary and appropriate in order to resolve this controversy. Jonathan Tyler is therefore entitled to a declaratory judgment

that he has not and does not infringe any valid right of Sandler in the "Northern Light" mark.

## COUNT 2- DECLARATORY JUDGMENT
### (Declarations under Texas common Law and the Texas Trademark Act)

40. Jonathan Tyler seeks a declaration under Texas Business and Commerce Code § 16.003 that neither Sandler nor the band "Northern Light" have used the mark "Northern Light" in the State of Texas at any point since August 5, 2008, and indeed, that Sandler has not registered "Northern Light" in Texas.

41. On information and belief, Sandler has not registered the mark "Northern Light" with the Texas Secretary of State.

42. On information and belief, neither Sandler nor the band "Northern Light" have used "Northern Light" in the State of Texas at any point since August 2008.

43. Jonathan Tyler seeks a declaration under Texas common law that Sandler has no common-law rights to the Challenged Mark in Texas.

44. If Sandler has any rights to "Northern Light" under Texas common law or the Texas Business and Commerce Code, Jonathan Tyler seeks a declaration that "Jonathan Tyler and the Northern Lights" does not infringe the rights, if any, of Sandler under Texas law.

## JURY DEMAND

45. Jonathan Tyler hereby demands a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Jonathan Tyler respectfully requests that this Honorable Court declare that Jonathan Tyler through the use of "Jonathan Tyler and the Northern Lights"

does not and has not infringed the "Northern Light" mark, U.S. Reg. 3479542, and that the Court grant such other and further relief, including attorney's fees, which the Court finds to be just.

Respectfully submitted,

/s/ Tim Menchu
TIM MENCHU
2603 OAK LAWN AVE.,
SUITE 200
DALLAS TX  75219
PHONE: (214) 766-1394
STATE BAR #00791247
timmenchu@gmail.com
ATTORNEY FOR PLAINTIFF

## TRADEMARK LICENSE AGREEMENT

This Trademark License Agreement (this "Agreement") is made as of the 19th day of February, 2010, by and between David Stuart Sandler, an individual ("LICENSOR") and Jonathan Tyler, an individual ("LICENSEE").

WHEREAS, LICENSOR is the sole and exclusive owner of the trademark and tradename "NORTHERN LIGHT", registered with the United States Patent and Trademark Office, under Registration Number 3,479,542, Serial Number 77-303,432, for audio recordings featuring music in Class 9 and for entertainment services by a musical group including live musical performances in Class 41 (the "LICENSED TRADEMARK").

WHEREAS, LICENSEE creates musical compositions, audio recordings, and music-related products and merchandise, offered for sale to the public, and renders entertainment services featuring live performances with a musical group under the trademark and tradename "JONATHAN TYLER AND THE NORTHERN LIGHTS" (collectively referred to as "LICENSEE'S ACTIVITIES AND SERVICES").

WHEREAS, LICENSOR is willing to grant to LICENSEE the right to use the LICENSED TRADEMARK or a derivation thereof in connection with LICENSEE'S ACTIVITIES AND SERVICES, subject to the terms and conditions of this Agreement.

NOW THEREFORE, in consideration of the mutual promises and covenants set forth herein, the parties, intending to be legally bound, hereto agree as follows:

## ARTICLE 1 - GRANT OF RIGHTS

1.1  For and in consideration of the payment of $10,000.00 by LICENSEE to LICENSOR (the "License Fee"), LICENSOR hereby grants to LICENSEE:

1.1.1  an exclusive (as to third parties only and subject to the provisions of paragraph 2.1 hereof) license to use throughout the United States the LICENSED TRADEMARK or a derivation thereof in connection with LICENSEE'S ACTIVITIES AND SERVICES, and in any related activities necessary for the facilitation thereof, subject to the terms of this Agreement; and

1.1.2  to the extent owned by LICENSOR, an exclusive (as to third parties only and subject to the provisions of paragraph 2.1 hereof) license to use throughout the world excluding the United States, the LICENSED TRADEMARK or a derivation thereof in connection with LICENSEE'S ACTIVITIES AND SERVICES, and in any related activities necessary for the facilitation thereof, subject to the terms of this Agreement.

1.2  For clarity, the LICENSED TRADEMARK may only be used in connection with the entirety of the trademark and trade name "JONATHAN TYLER AND THE NORTHERN LIGHTS", and may not be used alone or in combination with any other wording.

1.3  For the consideration exchanged hereby, the parties, on behalf of themselves, and on behalf of their agents, successors, heirs, and assigns, upon the execution hereof, hereby fully

release, acquit and forever discharge each other, and their agents, heirs, and assigns, from any and all claims, demands and causes of action of any nature, for damages, or any other relief, in law or equity, accruing or arising prior to the date hereof, whether known or unknown, in any way arising out of or connected to the LICENSED TRADEMARK. The release contemplated hereby shall survive the termination of this Agreement.

1.4 For the consideration exchanged hereby, LICENSOR hereby grants to LICENSEE the first option to purchase the LICENSED TRADEMARK in the event that LICENSOR elects to sell or otherwise transfer all or any of its rights therein. For clarity, during the term of this Agreement LICENSOR shall not sell any of its rights in the LICENSED TRADEMARK without first providing LICENSEE notice of LICENSOR's intent to sell such rights and providing LICENSEE an opportunity to enter into good faith negotiations relating to the purchase of rights in the LICENSED TRADEMARK.

1.5 LICENSOR hereby agrees for a perpetual term that LICENSOR will not, directly or indirectly, bring or support any action against LICENSEE for LICENSEE's use of the LICENSED TRADEMARK or any confusingly similar trademark outside of the United States.

1.6 LICENSEE hereby agrees for a perpetual term that LICENSEE will not, directly or indirectly, bring or support any action against LICENSOR for LICENSOR's use of the LICENSED TRADEMARK or any confusingly similar trademark outside of the United States.

## ARTICLE 2 - OWNERSHIP AND USE OF THE LICENSED TRADEMARK

2.1 LICENSEE acknowledges that LICENSOR owns the LICENSED TRADEMARK and all rights therein and that nothing in this Agreement shall prevent LICENSOR from using or otherwise exercising its rights in the LICENSED TRADEMARK, or give LICENSEE any right, title or interest in or to the LICENSED TRADEMARK other than the rights expressly granted in or necessarily implied pursuant to the license granted hereby.

2.2 All use of the LICENSED TRADEMARK and the goodwill associated therewith shall inure to the benefit of LICENSOR.

2.3 Prior to each renewal, and on reasonable request by LICENSOR, LICENSEE shall provide to LICENSOR representative samples of use of the LICENSED TRADEMARK during the prior year including, for example, copies of the visual art for recordings, advertising and other merchandise bearing the LICENSED TRADEMARK.

2.4 LICENSEE agrees that the services, goods and packaging covered by this Agreement shall be of a sufficiently high standard, style, appearance and quality as to protect and enhance the LICENSED TRADEMARK and the goodwill pertaining thereto; that such will be produced, sold and distributed in accordance with all applicable federal, state and local laws; and that the policy of sale, distribution and/or exploitation by LICENSEE shall

be of high standard and that the same shall not reflect adversely upon the good name of LICENSOR or the LICENSED TRADEMARK.

## ARTICLE 3 - TERM AND TERMINATION

3.1	This Agreement and the license granted herein shall be effective as of the date stated in the preamble above, and shall terminate after (1) one year unless renewed by LICENSEE. LICENSEE may renew this Agreement and the license granted herein for four (4) successive (1) one year periods by provision of the materials stated in Section 2.3 and making payment to LICENSOR of an Annual Renewal Fee which shall be $2,000 for the first annual renewal, $2,500 for the second annual renewal, $3,000 for the third annual renewal and $3,500 for the fourth annual renewal. The Annual Renewal Fee shall be due on or before the last day of February of each renewal year. Should LICENSOR not receive the Renewal Fee by the date required herein, LICENSOR shall notify LICENSEE in writing. LICENSEE shall have thirty (30) days from receipt of that notice in which to cure default by making the Renewal Fee payment to LICENSOR.

3.2	If this Agreement and license are renewed for each of the four annual renewals, then upon expiration of the fourth annual renewal, LICENSEE shall have the option to renew the Agreement and the license for a 100 year term by payment to LICENSOR of $40,000 due on or before the last day of February, 2015. If LICENSEE exercises such option, LICENSEE shall additionally pay to LICENSOR $5,000 each subsequent February during the 100 year term and shall provide LICENSOR the materials stated in Section 2.3. Should LICENSOR not receive the $5,000 payment by the date required herein, LICENSOR shall notify LICENSEE in writing. LICENSEE shall have thirty (30) days from receipt of that notice in which to cure the default by making the $5,000 payment to LICENSOR. If the default is not cured, the license shall automatically be revoked, and this Agreement shall terminate.

3.3	If this Agreement and license are renewed for each of the four annual renewals and then LICENSEE elects not to exercise the option of Section 3.2, LICENSOR agrees to enter good faith negotiations with LICENSEE to renew the Agreement and license.

3.4	Either party may terminate this Agreement in the event of a material breach by the other party subject to the provisions of Section 6.6 below.

3.5	Upon termination of this Agreement for any reason whatsoever, LICENSEE agrees that it shall have no further rights, interest or claims to the LICENSED TRADEMARK and that it will not thereafter continue to use the LICENSED TRADEMARK, or any confusingly similar trademark, for any purpose whatsoever, unless continued use of the LICENSED TRADEMARK is specifically permitted in accordance with this Article of this Agreement.

3.6.	In the event of termination of this Agreement for any reason other than a material breach by LICENSEE, LICENSEE shall be permitted to use any then existing inventory bearing the LICENSED TRADEMARK for a period not to exceed six (6) months, after which no further use of the LICENSED TRADEMARK or any goods or services associated with the LICENSED TRADEMARK shall be made.

ARTICLE 4 – WARRANTIES AND REPRESENTATIONS

4.1 Each party to this Agreement hereby expressly warrants and represents to the other party that:

    (A) They are legally competent and have the authority to execute this Agreement on their own behalf.

    (B) No promise or agreement which is not herein expressed has been made to them in executing this Agreement, and they are not relying upon any statement or representation of any agent of the parties that is not contained in this Agreement.

    (C) The execution of this Agreement represents a commercial arms-length transaction by and between the parties.

    (D) The execution of this Agreement and the grant or rights contemplated hereby shall not infringe upon the rights of third parties.

    (E) The parties have not and will not, during the term of this Agreement or any renewal thereof, take any action inconsistent with the rights granted hereby.

ARTICLE 5 - INFRINGEMENT

5.1 In the event of any actual or suspected infringement of the LICENSED TRADEMARK, LICENSOR shall have the right to bring any action for infringement and to recover and retain any and all damages. In the event LICENSOR elects in its sole discretion not to bring action, LICENSEE shall have the right to bring such action and LICENSOR will fully cooperate with LICENSEE, at LICENSEE's expense, in any such action. Any damages recovered in such action shall first reimburse LICENSEE for all expenses incurred by LICENSEE in connection with such action, and shall thereafter be equally shared between LICENSOR and LICENSEE.

ARTICLE 6 - MISCELLANEOUS

6.1 <u>Entire Agreement</u>. This Agreement constitutes the entire agreement among the parties with respect to the subject matter hereof and supersedes all prior agreements, understandings and negotiations, both written and oral, between the parties with respect to the subject matter hereof. The parties agree to negotiate in good faith any additional terms necessary to effectuate the intent of this Agreement.

6.2 <u>Non-Transferable</u>. The license granted herein is personal to LICENSEE and is not sublicensable or otherwise transferable without the prior written consent of LICENSOR, which shall be at LICENSOR's sole discretion. Notwithstanding the foregoing, LICENSEE's recording company, promotional agents, and distributors shall be entitled to the benefit of the rights granted hereunder in the creation, promotion, marketing and exploitation of LICENSEE's music and otherwise in their facilitation of LICENSEE'S ACTIVITIES AND SERVICES. For clarity, in the event of termination of this Agreement, the benefit indicated in the previous sentence shall simultaneously terminate.

6.3 <u>Disclaimer of Agency, Partnership and Joint Venture</u>. Nothing in this Agreement shall constitute or be deemed to constitute a partnership or joint venture between the parties

hereto or constitute or be deemed to constitute any party the agent or employee of the other party for any purpose whatsoever and neither party shall have authority or power to bind the other or to contract in the name of, or create a liability against, the other in any way or for any purpose.

6.4 Severability. If any provision of this Agreement shall be invalid or unenforceable, such invalidity or unenforceability shall not render the entire Agreement invalid. Rather, the Agreement shall be construed as if not containing the particular invalid or unenforceable provision, and the rights and obligations of each party shall be construed and enforced accordingly.

6.5 Notices. Any notice, instruction, direction or demand under the terms of this Agreement required to be in writing will be duly given upon delivery, if delivered by hand, facsimile transmission, or mail, to the following addresses:

If to LICENSOR:

David Stuart Sandler
4816 Queen Avenue South
Minneapolis, Minnesota 55410


If to LICENSEE:

Jonathan Tyler
C/O Jacob Herron
Inspire Artist Music
1607 Lyte Street, 106G
Dallas, Texas 75201


With Courtesy Copy to:

Decker Sachse
Falkin+Sachse, PLLC
2828 Routh Street, 5th Floor
Dallas, Texas 75201
deck@falkinlaw.com
(214) 242-4202 (fax)

or to such other addresses or telecopy numbers as may be specified by like notice to the other party.

6.6 Breach & Cure. A party hereto shall not be in breach of any of its material obligations hereunder unless and until the other party shall have given the breaching party specific written notice by certified or registered mail, return receipt requested, of the nature of such breach and the breaching party shall have failed to cure such breach within thirty (30) days after the breaching party's receipt of such written notice.

6.7   Governing Law.  This Agreement shall be construed in accordance with and governed by the substantive internal laws of the State of Minnesota.

6.8   Multiple Originals.  This Agreement may be executed in multiple originals of equal dignity.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized officers or agents as of the day and year first above written.

LICENSOR:

*/s/ David Stuart Sandler*

David Stuart Sandler

LICENSEE:

*/s/ Jonathan Tyler*

Jonathan Tyler

JS 44 (Rev. 06/17) - TXND (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

RECEIVED OCT 27 2017 CLERK U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS

## I. (a) PLAINTIFFS
Jonathan Tyler

**(b)** County of Residence of First Listed Plaintiff: Dallas
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Tim Menchu, Law Office of Tim Menchu
2603 Oak Lawn Ave. Suite 200, Dallas, Texas 75219

### DEFENDANTS
David Stuart Sandler

County of Residence of First Listed Defendant: Hennepin
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

**317-CV2966-C**

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☒ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 196 Franchise | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S. Code § 2201
Brief description of cause:
Plaintiff seeks declaration of non-infringement of "Jonathan Tyler and The Northern Lights" to the mark "Northern Light"

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE 10/26/2017
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____